Vincent LILLY, Appellant

v.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE and Bill Pierce, Appellees

NO. 14–14–00343–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinions filed August 4, 2015

Rehearing Overruled October 6, 2015

Vincent Lilly, Iowa Park, TX, for appellant.

Leah O'Leary, Austin, TX, for appellee.

Panel consists of Chief Justice Frost and Justices Boyce and McCally.

## OPINION

William J. Boyce, Justice

Appellant Vincent Lilly appeals from the trial court's order granting summary judgment in favor of appellees the Texas Department of Criminal Justice (TDCJ) and Bill Pierce based on limitations. We affirm.

### BACKGROUND

According to his petition, Lilly is a member of the House of Yahweh, a religion that prohibits its members from eating pork and using cooking or eating utensils that have been used to prepare and serve pork. The TDCJ imprisoned Lilly from February 2011 until June 2013 at its Stringfellow Unit, where it operates a kosher kitchen in full compliance with Lilly's dietary restrictions. On March 16, 2011, Lilly requested that his name be added to the Stringfellow Unit's kosher kitchen list. Rabbi Goldstein, who maintained the list, denied Lilly's request, stating: "Per TDCJ

policy, [t]he kosher kitchen is restricted to the Jewish community only."

Lilly filed a Step 1 offender grievance form on March 24, 2011, complaining that the TDCJ's failure to provide him a kosher diet violated his constitutional rights. Lilly requested that, to resolve his complaint, the TDCJ add his name to the kosher kitchen list. The warden responded to Lilly's grievance on April 27, 2011, stating: "Your grievance has been reviewed. In order to address your concerns appropriately, the unit Chaplain has submitted HQ150 form to the Religious Practice Committee in Huntsville. Wait for their disposition."

Lilly filed a Step 2 offender grievance form on June 8, 2011.[1] Lilly asserted on his form that he was dissatisfied with the TDCJ's resolution of his Step 1 offender grievance form because more than 40 days had elapsed since the warden's response and the Religious Practice Committee had not returned its decision. Pierce, who was the director of the TDCJ's Chaplaincy Department, responded to Lilly's Step 2 offender grievance form on June 24, 2011, stating: "Your complaint has been received and investigated. Your grievance was answered appropriately in Step 1. The Religious Practice Committee (RPC) has your request and it is scheduled for review the next time they meet on June 24, 2011. The RPC meets every 90 days. No further action is warranted at this time."

Lilly filed additional grievances over the next several months by submitting Step 1 and Step 2 offender grievance forms. On July 25, 2011, Lilly filed a grievance complaining that the TDCJ did not provide him with adequately sanitized eating uten-

sils for his kosher diet; he requested that he be allowed to bring his commissary-purchased bowl, cup, and spoon to the dining hall. Lilly filed another grievance on August 25, 2011, complaining that he had observed kitchen staff serve non-Jewish inmates and officers kosher meals on disposable trays; Lilly requested that he be provided the TDCJ's Kosher Kitchen Policy for review. Lilly filed a fourth grievance on December 5, 2011, complaining that his dietary requirements had not been met; he requested "[d]isposable eating ware and cooking ware where no [p]ork has been used, in comports with my religious belief, like Judaic faith [o]ffenders."

The TDCJ responded to Lilly's additional grievances stating in its various Step 1 and Step 2 replies that Lilly could not bring his personal items to the dining hall; "utensils, trays (plates) and cups [were] adequately cleaned and sanitized to remove all contamination of pork or any other food items served in the Offender Dining Hall;" and "[t]he Administration ha[d] no plans of providing disposable eating wares for offenders." The TDCJ did not provide its Kosher Kitchen Policy to Lilly for review.

Lilly received the Religious Practice Committee's disposition regarding his first-filed grievance on February 1, 2012. According to Lilly, the committee stated: "The [p]ork-free/[m]eat-free meals provided by the Agency meets [sic] the requirements of the scriptures you presented."

Lilly wrote Pierce regarding the committee's interpretation of scriptures after receiving the committee's disposition. Lilly questioned why Jewish inmates, relying

---

1. The Step 2 offender grievance form lists the date received as June 8, 2011. Lilly alleges that he filed his grievance form on June 7, 2011. The exact date is not dispositive of this appeal. We state the date listed on the griev-ance form as the date Lilly filed his grievance and resolve similar discrepancies in the same manner by stating the dates listed on the grievance forms.

on the same scriptures, were provided the kosher diet Lilly requested. Pierce did not respond to Lilly's letter.

Lilly resumed filing grievances. On July 16, 2012, Lilly complained that the Stringfellow Unit's Kosher Kitchen Policy was discriminatory and requested permission to read the policy. Pierce responded on March 1, 2013: "You present no ·new facts for consideration. You may request to read the Kosher Kitchen [P]olicy through the Open Records Act. No further action is warranted."

Lilly filed another grievance on March 20, 2013, citing the Texas Religious Freedom Restoration Act section 110.006(g), and requesting that Pierce provide the Religious Practice Committee's rationale "as to why the Scriptures cited does [sic] not prohibit eating from utensils contaminated by [p]ork." See Tex. Civ. Prac. ·& Rem. Code § 110.006(g) (Vernon 2011). Pierce responded on April 26, 2013: "The pork-free/meat[-]free meals provided by TDCJ meet the requirements of the scriptures you have provided."

Lilly sent an open records request to the Stringfellow Unit's law library supervisor on April 1, 2013, to review the Kosher Kitchen Policy. The law library supervisor denied Lilly's request. Lilly filed a Step 1 offender grievance form on April 1, 2013, complaining that the law library supervisor had disregarded Lilly's request that he be allowed to review the Kosher Kitchen Policy. The warden responded to Lilly's Step 1 offender grievance form on May 10, 2013, stating: "Your grievance has been reviewed .... Offenders are not allowed to have copies or review the policy requested for. No further action warranted." Lilly filed a Step 2 offender grievance offense form on May 15, 2013. The

warden rescinded his Step 1 response, and provided the following corrected Step 1 response: "Regarding your request to review the Kosher [K]itchen Policy. The Policy[,] Reassignment Procedures to a Jewish Designated Unit[,] is in the Chaplaincy Manual, policy number 07.02. You may review this policy in the Unit Law Library."

· The TDCJ transferred Lilly from the Stringfellow Unit to the James Allred Unit in June 2013. At the time of his transfer, Lilly had not received the TDCJ's response to his May 15, 2013 Step 2 offender grievance form. Lilly filed a separate grievance complaining that he had not received the TDCJ's response. The TDCJ provided Lilly a copy of its Step 2 response on· September 30, 2013. The TDCJ's response stated: "Your grievance was investigated and disclosed that offenders are permitted to ·review the Kosher Diet [P]olicy in the law library. Submit an I-60 to the law library. · No further action warranted." ·

Lilly reviewed the Chaplaincy Manual policy number 07.02 and determined, according to his petition, that "[t]his· policy ha[d] 'nothing whatsoever' to do with the Stringfellow Unit Kosher Kitchen." Lilly also determined that the TDCJ's response to his May 15, 2013 Step 2 offender grievance form was "'irrelevant', for [Lilly] [was] requesting to review the Kosher Kitchen Policy[,] which states the Stringfellow Unit Kosher Kitchen is restricted to the Jewish community[,] not the Kosher Diet Policy."

Lilly filed a lawsuit against the TDCJ and Pierce on October 22, 2013.[2] Lilly alleged in his petition that appellees' actions "substantially burdened his free ex-

2. We deem Lilly's lawsuit to have been filed on October 22, 2013, because, on that date, Lilly placed his pro se petition, addressed to the trial court clerk, in the prison mail system. See Warner v. Glass, 135 S.W.3d 681, 684 (Tex.2004).

ercise of religion to use '[p]ork-free' cooking and eating utensils in the preparation and serving of his daily meals in comports [*sic*] with his religious requirement [*sic*]." Lilly asserted claims under the Texas Religious Freedom Restoration Act, the First and Fourteenth Amendments to the United States Constitution, and Article 1, sections 3 a and 6 of the Texas Constitution. *See* Tex. Civ. Prac. & Rem.Code § 110.003 (Vernon 2011).[3]

Appellees answered and moved for traditional summary judgment on all of Lilly's claims, arguing that his claims were barred by the applicable statutes of limitations. Appellees asserted that Lilly's federal constitutional claims were subject to a two-year limitations period and Lilly's Texas Religious Freedom Restoration Act claim was subject to a one-year limitations period. Appellees calculated that the limitations periods ran from June 24, 2011, when Lilly received the TDCJ's response to his first Step 2 offender grievance form, and asserted that his claims were barred by the statutes of limitations when filed on October 22, 2013.

Lilly argued in his summary judgment response that his claims accrued on February 1, 2012, when he received the Religious Practice Committee's decision regarding his first-filed grievance. Lilly also "pl[ed] the Doctrine of Fraudulent Concealment, as his affirmative defense to the Statute of Limitations ... because of the '[d]eceptive methods' employed by [appellees] to impede [Lilly] from challenging the [Kosher Kitchen Policy], which [he] discovered was nonreviewable by inmates on May 10, 2013." Lilly argued that; pursuant to the Texas Religious Freedom Restoration Act section 110.006(g), appellees had a duty to provide their rationale for imposing a substantial burden on his free exercise of religion. Thus, according to Lilly:

> Where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence. *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex.1983);[4] see also TEX. CIV. PRAC. & REM. CODE § 110.006(g). Consequently, the Defendants will not be permitted to avail themselves of the protection of the statute of limitations because by their own fraud [trying to conceal a discriminatory policy from review by inmates as a means of impeding the policy from being challenged] they have prevented Plaintiff from seeking [*sic*] redress within the period of limitations. To reward a wrongdoer of his own fraudulent contrivances would make the statute a means of encouraging rather than preventing fraud. Id. at 909.

(first set of brackets in the original).

The trial court granted summary judgment in favor of appellees on all of Lilly's claims based on the statutes of limitations.

---

3. Lilly does not discuss his claims under the Texas Constitution in his appellate brief. To the extent Lilly complains that the trial court erred in dismissing claims under the Texas Constitution, we reject this contention as being inadequately briefed. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

4. While *Borderlon* stated this standard, it remanded the case to the trial court to consider the issue of fraudulent concealment. *See Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983); *see also id.* at 908–09 (doctrine of fraudulent concealment was not abolished by statute in medical malpractice cases).

Lilly requested findings of facts and conclusions of law, which the trial court denied. Lilly then timely appealed, challenging the trial court's order granting summary judgment and the court's refusal to sign findings of facts and conclusions of law.

## ANALYSIS

### I. Summary Judgment[5]

We review a summary judgment *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex.2009). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that judgment should be granted as a matter of law. Tex. R. Civ. P. 166a(c); *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex.2001). In conducting our review, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999).

When a defendant moves for summary judgment on the basis of an affirmative defense such as limitations, it has the burden to conclusively prove all the elements of the affirmative defense as a matter of law. *Id.* A defendant who moves for summary judgment based on the statute of limitations must (1) conclusively prove when the cause of action accrued; and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury. *Id.* If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue to avoid the statute of limitations. *Id.*

The parties do not disagree about the applicable limitations periods. Lilly brought his federal constitutional claims pursuant to 42 U.S.C. section 1983, which provides a cause of action for deprivations of federal constitutional rights under color of state law. *See* 42 U.S.C.A. § 1983 (West 2012); *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330–33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Congress did not provide a statute of limitations or a body of tolling rules applicable to section 1983 claims; therefore, courts considering such claims apply the forum state's statute of limitations for personal-injury torts and tolling rules unless the applicable statute of limitations or tolling rules would be inconsistent with federal law. *See Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); *Bd. of Regents v. Tomanio*, 446 U.S. 478, 483–86, 100 S.Ct. 1790, 64

---

5. We liberally construe Lilly's pro se pleadings (just as we liberally construe all litigants' pleadings) but we hold him to the same standards as a licensed attorney. *See Nabelek v. Bradford*, 228 S.W.3d 715, 717 (Tex.App.–Houston [14th Dist.] 2006, pet. denied). Lilly contends on appeal that the trial court erred in granting summary judgment, and he identifies specific arguments in support of this contention that are addressed in the majority opinion. Lilly did not raise the arguments advocated in the dissenting opinion. There-

fore, we do not address them. "A court of appeals commits reversible error when it sua sponte raises grounds to reverse a summary judgment that were not briefed or argued in the appeal." *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 916 (Tex.2015) (citing *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209–10 (Tex.1990) (per curiam)). Reversing on the grounds advocated by the dissenting opinion would run afoul of this precept.

L.Ed.2d 440 (1980); *Li v. Univ. of Tex. Health Sci. Ctr. at Houston,* 984 S.W.2d 647, 651 (Tex.App.–Houston [14th Dist.] 1998, pet. denied). Lilly does not contend that the applicable Texas statute of limitations or tolling rules are inconsistent with federal law. In Texas, the limitations period for a personal-injury tort is two years; therefore, the limitations period for a section 1983 cause of action in Texas is two years. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon Supp. 2014); *see also Li,* 984 S.W.2d at 651.

Lilly also asserts a claim under the Texas Religious Freedom Restoration Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 110.003. The act prohibits a government agency from substantially burdening a person's free exercise of religion, with certain exceptions. *See id.* § 110.003(a), (b). The statute of limitations for a claim brought under the Religious Freedom Restoration Act is one year from "the date the person knew or should have known of the substantial burden on the person's free exercise of religion." *Id.* § 110.007(a) (Vernon 2011).

Lilly does not assert that the discovery rule applied to delay the accrual of his causes of action; therefore, we do not consider the rule's application to this case. *See KPMG,* 988 S.W.2d at 748; *cf. Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 734 (Tex.2001) ("We have described the discovery rule as 'a very limited exception to statutes of limitations,' and have condoned its use only when the nature of the plaintiff's injury is both inherently undis-

coverable and objectively verifiable.") (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex. 1996)).

**A. Inmate Grievance System**

 . In his first issue, Lilly contends that his causes of action did not accrue and the limitations periods did not begin to run until he was authorized to seek a judicial remedy, which occurred only after he received the Religious Practice Committee's disposition on February 1, 2012.[6] Lilly states: "Since [Lilly] is confined in the TDCJ, Texas Government Code (TEX. GOVT.CODE) mandate [*sic*] that he seek his judicial remedy after he receives a written decision from the highest authority provided for in the grievance system." Lilly cites Texas Government Code section 501.008(d)(1) for his proposition. He does not cite or address section 501.008(d)(2).

Texas Government Code section 501.008(d) provides, in full:

> An inmate may not file a claim in state court regarding operative facts for which the [TDCJ] grievance system provides the exclusive administrative remedy until:
>
> (1) the inmate receives a written decision issued by the highest authority provided for in the grievance system; or
>
> (2) if the inmate has not received a written decision described by Subdivision (1), the 180th day after the date the grievance is filed.

---

**6.** Lilly asserts in his appellate brief:

Normally, [Lilly's] causes of action would have accrued on February 1, 2012, because that was the date he received [n]otice from the highest authority provided for in the grievance system, the [Religious Practice Committee], denying his request on Step 1 grievance # 2011124533 [*i.e.,* Lilly's first Step 1 offender grievance form, filed on March 24,

2011], to receive his daily pork-free meals from the kosher kitchen in comports with his religious requirement. Thus [Lilly's] Texas Religious Freedom Restoration Act claim was due 'one-year' from the February 1, 2012 date, on February 1, 2013. Likewise, his Title 42 United States Code Section 1983 claim was due 'two-years' from February 1, 2012, on February 1, 2014.

Tex. Gov't Code Ann. § 501.008(d) (Vernon 2012).

Texas Government Code section 501.008(e) provides:

The limitations period applicable to a claim arising out of the same operative facts as a claim for which the grievance system provides the exclusive remedy:

(1) is suspended on the filing of the grievance; and

(2) remains suspended until the earlier of the following dates:

(A) the 180th day after the date the grievance is filed; or

(B) the date the inmate receives the written decision described by Subsection (d)(1).

*Id.* § 501.008(e) (Vernon 2012).

Lilly filed his first grievance on March 24, 2011, complaining that the TDCJ failed to provide him a kosher diet and that Rabbi Goldstein refused to add his name to the kosher kitchen list. The warden responded to Lilly's grievance, stating: "Your grievance has been reviewed. In order to address your concerns appropriately, the unit Chaplain has submitted HQ150 form to the Religious Practice Committee in Huntsville. Wait for their disposition." Lilly escalated his first grievance by filing a Step 2 offender grievance form, to which Pierce responded on June 24, 2011: "Your complaint has been received and investigated. Your grievance was answered appropriately in Step 1. The Religious Practice Committee (RPC) has your request and it is scheduled for review the next time they meet on June 24, 2011. The RPC meets every 90 days. No further action is warranted at this time."

The TDCJ's Step 1 and Step 2 responses to Lilly's grievance forms arguably suggest that the Religious Practice Committee was the "highest authority provided for in the grievance system." *See id.* § 501.008(d)(1). Appellees dispute that the Religious Practice Committee was the highest authority provided for in the grievance system, but did not provide summary judgment evidence conclusively establishing that another person or entity was the highest authority. We need not decide that question, however, because in any event, Lilly was authorized under section 501.008(d)(2) to seek a remedy in state court on September 20, 2011—which is the 180th day after he filed his grievance—regardless of section 501.008(d)(1)'s operation.

Likewise, the limitations periods for Lilly's causes of action as alleged began to run, at the latest, on September 20, 2011, pursuant to Texas Government Code section 501.008(e)(2)(A), regardless of whether Lilly had received a written decision from the highest authority provided for in the grievance system. Therefore, Lilly's claims were barred by the applicable one-year and two-year statutes of limitations when Lilly filed his lawsuit on October 22, 2013, unless the limitations periods were otherwise tolled. *See* Tex. Civ. Prac. & Rem. Code Ann. § 110.007(a); *id.* § 16.003(a); *Wallace,* 549 U.S. at 387, 127 S.Ct. 1091; *Li,* 984 S.W.2d at 651. We overrule Lilly's first issue.

**B. Fraudulent Concealment Doctrine**

■ In his second issue, Lilly contends that the doctrine of fraudulent concealment tolled the limitations periods until May 10, 2013. He asserts:

[Lilly] plead [*sic*] the Doctrine of fraudulent concealment to the bar of the statutes of limitations defense of [appellees]. Fraudulent concealment tolls an action's accrual period until plaintiff learned [*sic*] of, or should have discovered, the deceitful conduct or facts giving rise to

his causes of action. The [TDCJ] established a 'policy' that only the Judaic inmates could use the kosher kitchen without a legitimate penological interest, and[,] as a means to keep other religious inmates from challenging the policy as favoring the Judaic religion, mandated that the policy is not reviewable by inmates. The policy was applied to [Lilly] to deny him his request to eat from the kosher kitchen, when [Lilly] requested to review the policy to see if it actually excluded him, not knowing the policy was non-reviewable by inmates; [Pierce], in concert with other prison officials, used deceit to keep the knowledge the policy was non-reviewable by inmates secret, by giving [Lilly] false information or ignoring his request to review the policy, and applying a 'double-standard' to [Lilly's] scriptural authority, as a means to keep from revealing the kitchen was restricted to the Judaic religion.

On May 10, 2013, [Lilly] was inadvertently informed the policy was non-reviewable by inmates. To which [Lilly] was then given more false and misleading information to try to cover the revelation, by [Pierce] and other prison officials. Thus, [Lilly's] accrual date should commence from the date of the discovery of the fraud; and timely filed [sic] once he received his Step 2 grievance back on October 11, 2013,[7] which he filed on October 22, 2013. Because the 'Kosher Kitchen Policy' is what this case is predicated on, which was fraudulently concealed.

Additionally, Lilly argues that appellees had a duty to disclose their rationale for imposing a substantial burden on Lilly's free exercise of religion. He cites Texas Religious Freedom Restoration Act section 110.006(g), which provides:

> In dealing with a claim that a person's free exercise of religion has been substantially burdened in violation of this chapter, an inmate grievance system, including an inmate grievance system required under Section 501.008, Government Code, must provide to the person making the claim a statement of the government agency's rationale for imposing the burden, if any exists, in connection with any adverse determination made in connection with the claim.

Tex. Civ. Prac. & Rem.Code Ann. § 110.006(g).[8]

Lilly contends:

> [T]he doctrine of fraudulent concealment provides that where a defendant is under a duty to make disclosure but fraudulent [sic] conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence. See Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 351–52 n. 4 (Tex. 1990).

While the Moreno court stated this standard, it expressed no opinion on the doctrine's applicability to the case. See More-

---

**7.** Lilly refers to his May 15, 2013 Step 2 offender grievance form, the response to which Lilly received after he transferred from the Stringfellow Unit to the James Allred Unit. It is unclear whether Lilly received the Step 2 grievance response on September 30, 2013, as the grievance form states, or October 11, 2013, as Lilly asserts in his appellate brief.

The exact date Lilly received the response is not dispositive of this appeal.

**8.** Section 110.006(g) does not purport to toll any limitations period until an inmate receives the government agency's rationale. See id.; see also id. § 110.005 (Vernon 2011) ("This chapter does not affect the application of Section ... 501.008, Government Code.").

no v. Sterling Drug, Inc., 787 S.W.2d 348, 352 n. 1 (Tex.1990).

## 1. Discussion

■■■■■ Fraudulent concealment tolls the statute of limitations after a cause of action accrues. BP Am. Prod. Co. v. Marshall, 342 S.W.3d 59, 67 (Tex.2011). The elements of fraudulent concealment are: (1) existence of an underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception. Markwardt v. Tex. Indus., Inc., 325 S.W.3d 876, 895 (Tex. App.–Houston [14th Dist.] 2010, no pet.). " 'The estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action.' " Etan Indus., Inc. v. Lehmann, 359 S.W.3d 620, 623 (Tex.2011) (quoting Borderlon v. Peck, 661 S.W.2d 907, 909 (Tex.1983)). Assuming for argument's sake that the fraudulent concealment doctrine applies here as asserted by Lilly, the doctrine could not forestall summary judgment.

Texas Religious Freedom Restoration Act section 110.006(g) required the TDCJ to provide a statement of its rationale for imposing a burden, if any existed, in connection with an adverse decision made in connection with Lilly's free exercise of religion claim. See Tex. Civ. Prac. & Rem. Code Ann. § 110.006(g). Arguably, the

TDCJ's grievance system did not provide such a statement.[9]

Nevertheless, appellees' alleged concealment of their section 110.006(g) statement of rationale did not conceal Lilly's causes of action. As alleged, Lilly's Religious Freedom Restoration Act claim and section 1983 claims were based on appellees' denials of a kosher diet to Lilly and appellees' refusal to add Lilly's name to the kosher kitchen list. Lilly knew that he was denied a kosher diet and knew that he had been rejected from the kosher kitchen list, as early as March 2011, when Rabbi Goldstein denied Lilly's request to be added to the list and Lilly first filed a grievance. Appellees' "deceit," if any, did not conceal these facts underlying Lilly's causes of action; therefore, we determine that Lilly did not raise a fact issue regarding the doctrine of fraudulent concealment. See Exxon Corp. v. Emerald Oil & Gas Co., 348 S.W.3d 194, 209 (Tex.2011) (the doctrine of fraudulent concealment did not toll the limitations period where plaintiff had "actual knowledge of alleged injury-causing conduct"); cf. Etan Indus., Inc., 359 S.W.3d at 623 (the estoppel effect of defendant's presumed fraudulent concealment ended when plaintiffs were appraised of facts, conditions, and circumstances sufficient to cause a reasonable person to make inquiry that would lead to the discovery of the concealed cause of action.). We overrule Lilly's second issue.

We hold that the trial court properly granted summary judgment in appellees' favor on all of Lilly's claims based on the statutes of limitations.[10]

---

9. Pierce's response on June 24, 2011, to Lilly's Step 2 offender grievance form—which appellees assert was a final decision—stated that Lilly's request was referred to the Religious Practice Committee; Pierce's response did not purport to offer a rationale as described by section 110.006(g). Lilly does not explain why he would be entitled to review

the Kosher Kitchen Policy under section 110.006(g).

10. We do not reach Lilly's issue that the trial erred in granting summary judgment based on the Prison Litigation Reform Act section 1997e(e) because we determine that the court correctly granted summary judgment based

## II. Findings of Fact and Conclusions of Law

In his third issue, Lilly contends that the trial court erred in refusing to sign findings of fact and conclusions of law upon his request. Findings of fact and conclusions of law "'have no place' in a summary judgment proceeding [because] for summary judgment to be rendered, there cannot be a 'genuine issue as to any material fact', Tex. R. Civ. P. 166a(c), and the legal grounds are limited to those stated in the motion and response, *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993)." *IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997). We reject Lilly's third issue.

### Conclusion

Having rejected Lilly's issues that the trial court erred in granting summary judgment in favor of appellees based on the statutes of limitations and in denying Lilly's request for findings of fact and conclusions of law, we affirm the trial court's judgment.

(Frost, C.J., dissenting)

Kem Thompson Frost, Chief Justice, dissenting.

Summary judgment was not proper. In Lilly's first and second issues, he asserts the trial court erred in granting summary judgment in favor of the Texas Department of Criminal Justice and Bill Pierce (hereinafter the "Prison Parties") because they did not prove Lilly's claims are time-barred. The majority affirms the summary judgment on a ground not asserted in the motion. No ground in the Prison Parties' summary-judgment motion supports their entitlement to summary judgment. Therefore, this court should reverse, not affirm.

The Prison Parties moved for summary judgment based on the affirmative defense that Lilly's claims are barred by the applicable statute of limitations. As the ones asserting limitations in a summary-judgment motion, the Prison Parties bore the burden to establish the defense.[1] To prevail, they were required to (1) prove conclusively when Lilly's claims accrued, and (2) negate the discovery rule, if it applied and had been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when Lilly discovered, or in the exercise of reasonable diligence should have discovered, the nature of his injury.[2] If, and only if, the Prison Parties were to establish that the statute of limitations bars the claims, would it fall to Lilly, as the non-movant, to adduce summary-judgment proof raising a fact issue to avoid summary judgment based on the statute of limitations.[3] Simply stated, the Prison Parties had to prove their affirmative defense conclusively, including the date on which limitations commenced.[4] They did not do it.

### Texas Government Code Section 501.008(d)(2)

In their summary-judgment motion, the Prison Parties assert that tolling of the limitations period for Lilly's claims stopped on June 24, 2011, the date Lilly received a response to his Step Two grievance from Bill Pierce, the Director of the

---

1. *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 220 (Tex.2003).

2. *KPMG Peat Marwick v. Harris Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999).

3. *See id.*

4. *See id.*

on the statutes of limitations. *See* 42 U.S.C.A. § 1997e(e) (West 2012); Tex. R. App. P. 47.1.

Chaplaincy Department. Thus, the Prison Parties assert, the statute of limitations expired for Lilly's Texas Religious Freedom Restoration claim one year later, on June 24, 2012, and the statute of limitations expired for Lilly's section 1983 constitutional claims two years later, on June 24, 2013. Lilly filed suit on October 22, 2013, which the Prison Parties contend is after limitations ran on all of Lilly's claims.

### The Prison Parties' Failure to Prove When Limitations Began to Run

The accrual analysis is central to evaluating a limitations defense. In jumping straight to the tolling inquiry, the Prison Parties miss a crucial step in assessing whether Lilly's claims are time-barred. In their appellate briefing, the Prison Parties do not analyze when the statute of limitations began to run. Nor did they address this essential point in their summary-judgment motion. For the Prison Parties' limitations defense to have merit, the statute of limitations must have begun running at some point before June 24, 2011 (the "Step Two Grievance Response Date"). Lilly filed two grievances before the Step Two Grievance Response Date. Each related to the denial of his request that he be allowed to use the prison's Kosher kitchen.

As a general rule, the statute of limitations begins to run when a claim accrues.[5] A claim accrues at the point facts come into existence that authorize a party to seek a judicial remedy.[6] The statute of limitations began running on Lilly's Texas Religious Freedom Restoration claim the date Lilly knew of, or should have known of, the substantial burden on his free exer-

cise of religion."[7] Likewise, the limitations period for Lilly's section 1983 claim began to run when Lilly became aware he had suffered an injury or had sufficient information to know he had been injured.[8]

Neither the majority nor the Prison Parties has undertaken to examine when Lilly knew or should have known of the alleged substantial burden on his free exercise of religion. Nor have they analyzed when Lilly became aware he suffered the injuries asserted in his petition. The majority assumes Lilly knew of the claim in his petition when he filed his grievance on March 24, 2011 (the "Grievance Filing Date"). But, the Prison Parties did not conclusively prove in their summary-judgment motion that the injuries about which Lilly complains in his petition stem from the same conduct that caused Lilly to file the March 2011 grievance. Lilly complains of a variety of actions and decisions spanning the course of two years.

The Prison Parties erroneously assert that all of Lilly's grievances after the Grievance Filing Date are duplicative of the March 2011 grievance, in which Lilly complained that he had been denied access to the prison's Kosher kitchen. In later-filed grievances Lilly complained of different conduct and asserted different claims, including the following complaints:

- Lilly was not allowed to use his commissary-purchased eating utensils in the dining hall.

- The Religious Practice Committee refused to explain its rationale for denying Lilly access to the Kosher kitchen.

---

**5.** *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex.1998).

**6.** *Id.*

**7.** *See* Tex. Civ. Prac. & Rem. Code Ann. § 110.007(a) (West, Westlaw through 2013 3d C.S.).

**8.** *See Li v. Univ. of Tex. Health Sci. Ctr. at Houston*, 984 S.W.2d 647, 651 (Tex.App.–Houston [14th Dist.] 1998, pet. denied); *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir.2002).

• The policy of allowing Jewish inmates access to the Kosher kitchen, but denying access to Lilly (a member of a different religious faith but who observes the same dietary restrictions as a religious practice) violated the Equal Protection clause of the United States Constitution.

Lilly's subsequent grievances address different actions taken by the Prison Parties, and the grievances also express different complaints about those actions.

On appeal, Lilly posits that he did not know whether or not he had nonfrivolous claims under the Texas Religious Freedom Restoration Act and the First Amendment to the United States Constitution because he did not know the Prison Parties' rationale for the denial of his requests. Without knowing the Prison Parties' reasons for denying his requests, Lilly could not determine whether the Prison Parties had a purely secular reason for the denials.[9] Although Lilly, at times, phrases this argument as one sounding in fraudulent concealment, the essence of his argument is that the operative facts giving rise to his claims did not occur until he realized that the Prison Parties had no rationale for denying his request to use the Kosher kitchen.[10] Neither the Prison Parties nor the majority addresses this complaint.

The Prison Parties had the burden of conclusively proving when the statute of limitations began to run on Lilly's claims. Absent proof of this crucial element, they cannot establish the affirmative defense of limitations. The Prison Parties did not meet their burden of proving when Lilly's

claims accrued.[11] Indeed, they did not even undertake the accrual analysis necessary to get the requested relief. The failure makes summary judgment improper. For this reason alone, the trial court's judgment should be reversed.

### Failure to Prove When the Tolling of the Statute of Limitations Stopped

Even presuming for the sake of argument that the statute of limitations began running on Lilly's claims on the Grievance Filing Date, the Prison Parties admit the statute of limitations was tolled for some period of time during the grievance process. The Prison Parties contend in their summary-judgment motion that the tolling stopped on the Step Two Grievance Response Date.

Texas Government Code Sections 501.008(d) and (e) prevent an inmate from filing a claim in state court regarding operative facts for which the Texas Department of Criminal Justice grievance system is the exclusive administrative remedy until either the inmate receives a written decision from "the highest authority provided for in the grievance system" or 180 days pass.[12] Under Texas Government Code Section 501.008(d):

An inmate may not file a claim in state court regarding operative facts for which the grievance system provides the exclusive administrative remedy until:

(1) the inmate receives a written decision issued by the highest authority provided for in the grievance system; or

---

9. Lilly makes this point on page fourteen of his appellate brief.

10. See Perry v. Cohen, 272 S.W.3d 585, 587 (Tex.2008) (noting that the statement of an issue includes every subsidiary question that is fairly included).

11. See Provident Life and Acc. Ins. Co., 128 S.W.3d at 220; LTD Acquisitions, LLC v. Cook, No.04–10–00296–CV, 2011 WL 61634, at *2 (Tex.App.–San Antonio Jan. 5, 2011, no pet.) (mem.op).

12. See Tex. Govt.Code Ann. §§ 501.008(d), (e) (West, Westlaw through 2013 3d C.S.).

(2) if the inmate has not received a written decision described by Subdivision (1), the 180th day after the date the grievance is filed.[13]

The applicable statute of limitations is tolled, however, under section 501.008(e) once an inmate files a grievance.[14] The tolling stops "after the 180th day after the date the grievance is filed" or the date the inmate "receives a written decision issued by the highest authority provided for in the grievance system."[15]

In its summary-judgment motion, the Prison Parties imply the written communication Lilly received in response to his Step Two grievance is a written decision from the highest authority. Yet, the written communication Lilly received advised him that his Step One grievance was "answered appropriately" and his request was scheduled for review by the Religious Practice Committee. In response to Lilly's Step One grievance, the warden wrote that to address Lilly's concerns appropriately, Lilly's request had been forwarded to the Religious Practice Committee. The Prison Parties do not provide any explanation for how the response from Bill Pierce could be a written decision issued by the highest authority when Pierce's "decision" is that he had forwarded Lilly's request to another body for resolution. Accordingly, the Prison Parties did not meet their burden of conclusively proving that Pierce's communication was a written decision from the highest authority in the grievance system.[16]

In sum, the Prison Parties did not prove when the statute of limitations began running or when the tolling of the limitations period stopped. The majority asserts Lilly did not brief this argument. Lilly's appellate briefing shows otherwise. In his appellant's brief, Lilly sought "review of the trial court's Final Judgment granting summary judgment [and] dismissing his case in its entirety with prejudice [because his claims are] barred by [the] applicable statute of limitations." Lilly's first issue presented is "Whether [t]he [n]on-[f]inal [r]esponse [to Lilly's] Step [Two] Grievance [s]tarted [t]he [s]tatute of [l]imitations [r]unning?" Under that issue, Lilly states:

> As a general rule, a cause of action[,] and the statute of limitation[s] begins to run when facts come into existence that authorize a party to seek a judicial remedy. Since [the] plaintiff is confined in the T[exas] D[eparment] [of] C[riminal] J[ustice], [the] Texas Government Code ... mandate[s] that he seek his judicial remedy after he receives a written decision from the highest authority provided for in the grievance system.... The highest authority provided for in the TDCJ Grievance System to decide "religious practice issues" is the RPC [Religious Practice Committee].... Thus, plaintiff was authorized to seek his judicial remedy since he received the written decision of the RPC ... Consequently, Plaintiff contends the June 24, 2011 date [Grievance Response Date] is not applicable because the RPC did not issue its decision to [p]laintiff's Step [One] grievance on that date.

In keeping with the Supreme Court of Texas's directive to construe briefing rules liberally,[17] this court ought to conclude that Lilly broadly asserted that the trial court erred in granting summary judgment on the Prison Parties' ground that

---

13. *Id.* § 501.008(d).

14. *Id.* § 501.008(e)(1).

15. *Id.* § 501.008(e).

16. *Id.* § 508.001(d)(1).

17. *See Perry,* 272 S.W.3d at 587.

the statute of limitations began running on the Grievance Response Date. The majority's narrow reading of Lilly's appellate challenge is at odds with the high court's command to liberally construe appellate briefing. The supreme court has called us to eschew strict construction in favor of a more forgiving standard so that the right to appellate review is not lost by waiver.[18] Following this liberal-construction directive is especially important when the merits of the case involve allegations that fundamental rights—religious liberties—are being denied. Lilly's appellate briefing, though imperfect, substantially complies [19] and falls within the liberal standard for merits review.[20]

Lilly has challenged the trial court's accrual analysis and the failure of the summary-judgment evidence to show when the statute of limitations began running or when the tolling of the limitations period stopped. In doing so, Lilly has successfully attacked the only ground asserted in the Prison Parties' summary-judgment motion. The Prison Parties did not meet their burden of conclusively establishing that Lilly's claims are barred by limitations [21]

### Texas Government Code Section 501.008(d)(2)

The majority affirms summary judgment in favor of the Prison Parties, however, because the majority concludes the statute of limitations began running again on September 20, 2011, 180 days after the Grievance Filing Date. The majority reaches this conclusion by applying Texas Government Code section 501.008(d)(2), a position not advocated by the Prison Parties. Though the majority disposes of the case on this basis, the Prison Parties did not assert section 501.008(d)(2) applied in their summary-judgment motion, nor did they assert the statute of limitations began running on September 20, 2011. This court cannot affirm the trial court's summary judgment on a ground not stated in the Prison Parties' summary-judgment motion.[22] But, even if the Prison Parties had moved for summary judgment under section 501.008(d)(2), and even if the issue (whether any tolling of the statute of limitations ended in September 2011) were properly before this court, the Prison Parties still would not be entitled to summary judgment because they did not conclusively prove in their motion when the statute of limitations began to run.

### Conclusion

Because the Prison Parties did not meet their burden of conclusively proving Lilly's claims are barred by the statute of limitations, the trial court erred in granting summary judgment. And the majority errs in affirming it. This court should

18. *See id.*

19. *See* Tex. R. App. P. 38.1(f) (stating, "the statement of an issue or point will be treated as covering every subsidiary question that is fairly included."); Tex. R. App. P. 38.9 (stating, "[b]ecause briefs are meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case, substantial compliance with this rule is sufficient").

20. *See Perry,* 272 S.W.3d at 587; *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (1989).

21. *Id.* §§ 501.008(d), (e); *Provident Life and Acc. Ins. Co.,* 128 S.W.3d at 220; *LTD Acquisitions, LLC,* 2011 WL 61634, at *2.

22. *See Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex.1993). Because the Prison Parties did not assert an argument under section 501.008(d)(2) in their summary-judgment motion, Lilly was not required to brief this argument on appeal. *Cf. Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.,* 422 S.W.3d 821, 845 (Tex.App.–Dallas 2014, no pet.).

reverse the trial court's judgment. Because it does not, I respectfully dissent.